# EXHIBIT A

## INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
### International Arbitration Tribunal

---

**In the Matter of Arbitration between:**

Case Number 01-14-0001-4742

United Media Holdings, N.V.; and
TriLado Enterprise, Inc.,

*Claimants,*

v.

Forbes Media LLC,

*Respondent.*

---

## FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration provision in the Forbes Foreign Language License Agreement entered into by the above-named parties on October 21, 2009, as amended on June 8, 2012, October 12, 2012, June 17, 2013, and October 30, 2013 (the "Agreement"), and having been duly sworn, and having read the allegations, claims and counterclaims and written submissions of the Parties, and having heard three days of testimony and substantial argument from counsel for the Parties, do hereby FIND, RULE and AWARD, as follows:

1.  <u>Background</u>

This proceeding involves the rights to publish a Ukrainian edition of Forbes magazine, maintain a website and mobile application and perform other activities in the Ukraine involving the Forbes name, content and Ukrainian trademarks owned by Forbes Media LLC ("Forbes" or "Respondent"). Claimants United Media Holdings, N.V. and TriLado Enterprises (collectively "UMH" or

"Claimants") obtained rights to do so in 2013 by acquiring the rights to a license agreement from a predecessor that would run, absent earlier termination, until December, 2018.  The ultimate owner of the current licensees was placed on the list of blocked persons or specially designated national ("SDN"s) maintained by the United States Office of Foreign Asset Control ("OFAC") under Executive Order 13660 of the President of the United States in the summer of 2015, nearly a year after this arbitration began.  At the time of the change in licensee ownership, Forbes insisted, and Claimants agreed, to an amendment of terms of the license, including the addition of a Guideline J which is highly material to this dispute.

Forbes sent written notice of termination of the agreement for cause to Claimants in March of 2014.  After an agreed standstill by the parties had expired, Forbes sent a further written notice reactivating the original notice in September of that year. Almost immediately thereafter Claimants commenced this arbitration, contending that the notices of termination were inadequate and in bad faith.

I have issued three prior orders in this proceeding:  one denying a request for emergency injunctive relief, dated August 19, 2015; one concerning scheduling dated January 27, 2016; and one granting in part and denying in part a request by Forbes for preliminary injunctive relief dated February 5, 2016.  Those opinions (referred to hereafter by date when considered necessary and annexed as Exhibits A through C respectively) provide important background for this opinion and award.

2.     The Hearings and Positions of the Parties

The merits hearings were held on February 3, 2016 and on March 3 and 4, 2016, after two adjournments requested by Claimants.  See my January 27, 2016 order.  As Claimants made clear at the hearing, as well as in their Second Amended Claim, they seek primarily declaratory relief establishing that the license remains in force and, as an incident to that relief, full restoration of their right to use the website www.Forbes.ua.com.  Claimants also sought damages in their Second Amended Claim in an amount to be determined at the hearing but aside from an unsupported estimate offered by one witness no damage calculation or supporting evidence or information was offered at the hearing.  Claimants also asked that each party bear its own fees and that the costs of the arbitration be borne equally by the parties.

At the start of the hearing, Claimant's current counsel (its fourth, an attorney from the Ukraine) requested further postponement of the hearing to see if

Claimants' recently withdrawn third counsel could be re-engaged.  As discussed at the end of this opinion, I denied this request for essentially the reasons stated in the January 27, 2016 order.

Forbes defends the termination notices as proper, asserts a number of affirmative defenses and seeks relief on its counterclaims declaring the license terminated and enjoining Claimants' use of the Forbes name, trademarks and website.  Forbes further contends that Claimants' failure to provide discovery and other pre-hearing conduct merit monetary sanctions, an award of attorneys' fees and a shifting of costs to Claimants; in addition, Forbes argues that these lapses mandate that adverse inferences drawn on material facts.  Costs will be discussed later in this opinion.  While I find that a basis for drawing adverse inferences on facts relating to key issues of editorial independence and biased coverage exists, I have not found it necessary to rely on such inferences in reaching my decision.

3.    The Emergence of Executive Order 13660 As An Issue

In August of 2015, at a time before it could invoke the force majeure clause in the Agreement (Ex.298, Part Two,¶34), Forbes sent a notice to Claimants claiming that the license agreement was terminated because any further use of the trademarks and website would involve dealing with blocked property of an SDN in violation of Executive Order 13660.

I denied a motion for extraordinary emergency relief based on the Executive Order in my order of August 16, 2015 based on the showing made on an expedited basis and the balance of perceived hardships at that time but reserved final decision.  With my permission, both parties amended their pleadings in September in light of the Executive Order.  Forbes added defenses and a further counterclaim for declaratory and injunctive relief declaring the Agreement unenforceable and enjoining any use of the Forbes name, trademark, website or content by Claimants, all based on the Executive Order.  Forbes subsequently notified Claimants in November of its position that a force majeure had occurred, and that the Agreement would terminate as of November 28 (Forbes Ex. 442).

Acting at the arbitrator's suggestion that the parties seek neutral guidance from the Government if possible on the application of the Executive Order to an essentially paid up license to a foreign trademark (Tr. of Feb. 3, 2016 motion hearing at 88-89), Forbes obtained guidance that involvement in the arbitration itself without a license by a U.S. person such as counsel for Claimants or the arbitrator was prohibited.  The documents submitted to the Departments of Treasury and State on behalf of Forbes and produced at the hearing at the

arbitrator's request (Forbes Ex. 455 and 457) went somewhat beyond the suggestion of the arbitrator and in part advocated for specific relief for Forbes.

Presenting their author, Richard Newcomb as a relatively objective expert witness, when he had acted in fact as an advocate raised some concern on the part of Claimants' counsel about Mr. Newcomb's testimony (Tr. of March 4 at 573-34) which has been reiterated in its post-hearing brief. These concerns will be discussed at the appropriate point in this opinion.

4.     Termination of the Agreement for Cause

For the reasons set forth below, based on the clear weight of the evidence and without needing to draw adverse interests from Claimant's non-production of information, the relief sought by Claimants, both for damages and for declaratory and other relief, is denied, and the relief sought by Forbes is granted to the extent set forth later in this opinion and award. As to Claimants' claim for damages, relief would have to be denied for the further reason that no showing of a dollar amount--other than a conclusory estimate by Mr. Shpytko of approximately $100,000 of lost advertising over a five month period (March 3 Tr. at 175) -- was made at the hearing, nor was support for Mr. Shpytko's estimate or any other amount of damages adduced at either at or before the hearing. [1]

The arbitrator finds that Forbes acted reasonably and for good cause when it sent notices of termination in both March of 2014 (Forbes Ex. 281) and, after termination of the mutually agreed standstill period, in September, 2014 (Forbes Ex. 421) and that the written communications served as more than adequate notice. While Claimants argue that the second paragraph of the March letter (Forbes Ex. 281) expresses a stronger and clearer ground for termination than the first paragraph, the two grounds are interrelated; setting forth either ground alone, and certainly both together, provided clear notice of the nature of the breach. The fact that one ground for termination is listed second and another first, as argued by Claimants, is of no moment; the relative positioning of notice of a breach does not gainsay that it is notice of a ground for termination – and effective notice if the ground adverted to exists. As set forth below, the arbitrator finds that Forbes

---

[1] Claimants' attempt in their post-hearing brief to present a figure for this asserted advertising revenue loss in a slightly lower amount over a seven month period as well as to assert additional claims for millions of dollars in damages cannot cure the failure to have provided discovery or to have introduced evidence of damages at the hearing where it could have been disputed. In addition to the absence of a factual basis for these damage claims, Claimants articulated no legal basis for being able to recover damages against Forbes for amounts paid to purchase the business from a different party (the former licensee) or for recovering non-refundable guaranteed royalties.

carried its burden of showing that such grounds did exist with respect to both paragraphs of the letter and that termination was justified.

The arbitrator specifically finds that grounds for termination consistent with the notice of termination existed in both March and September, 2014 as well as before and after these dates. There is no dispute that Guideline J became an integral part of the contract as a result of the fourth amendment to the parties' agreement in October, 2013. The well-drafted guidelines on editorial independence codified and amplified the standards of editorial integrity and freedom from bias and undue ownership interference that were incorporated in less specific terms in the original contractual guidelines. Evidence showed that Claimants specifically committed to comply with these types of editorial standards both publicly and to Forbes. The terms of Guideline J dealing with editorial independence were regarded as a key protection and reason for going forward by Forbes, as Mr. Federle testified.

Forbes conceded that it bore the burden of proof on this issue. It fully discharged that burden. The clear weight of all the evidence was that several paragraphs of Guideline J under the heading "Editorial Independence" (Forbes Ex. 292 at 001423-24) were breached in highly material fashion. The evidence showed that the key principles of editorial independence and separation of the business or ownership side from the editorial side (¶¶ 1, 2, 3, and 5 of The Editorial Independence" section of Guideline J) were breached almost immediately as exemplified by the events in November, 2013.

Equally fundamental were the breaches of the anti-bias provisions of ¶4. While Forbes stressed the existence of interference from the business side and bias for "commercial" reasons, the evidence also showed equally if not more clearly biased coverage for "personal and political" reasons which are also prohibited by ¶4.

To be sure, major news events such as events surrounding the Maidan revolution were generally reported in brief, non-analytical news items. Mr. Shpytko, who testified at the hearing, undoubtedly has assured, consistently with his background and experience, that some economic and financial matters are reported on in a professional manner. The clear weight of the evidence showed, however, that, particularly on the website, the coverage of other significant, developments and subjects did not comply with Guideline J and its standards of "objectivity, fairness and accuracy." This has been exemplified by other major news organizations, including those such as the Wall Street Journal or Forbes U.S., with a distinct editorial point of view, or by the Forbes Ukraine website itself prior

to the change in ownership. The evidence also showed, as conceded by Claimants, that at least with respect to some Forbes Ukraine pieces reporting on Mr. Kurchenko or his business interests, Claimants failed to disclose the business or ownership interests of Mr. Kurchenko in Forbes Ukraine as required by ¶11 of Guideline J.

These guideline violations, separately and cumulatively, breached ¶13 as well. In the words of that paragraph, the "business and editorial sides" failed "to preserve the integrity and editorial independence of the Foreign Language Edition ahead of any commercial, personal, political or other interests" and created rather than avoided "the appearance of impropriety or bias," precisely as indicated in the original notice of termination.

The arbitrator also finds that the above breaches cumulatively amounted to breaches of the more general language in Sections 1 and 5 of the Promotion/Public Relations Guideline (Forbes Ex. 298 at 001009) of the License Agreement in involving actions that would hold the Foreign Edition "up to ridicule or questionable motives" and failing consistently to meet "the standards of excellence in editorial content." Although not specifically pointed to by Forbes at the hearing, the arbitrator also finds that the above breaches cumulatively violated sections 4(c),4(d) and 5(a) of Part Two of the License Agreement itself (Forbes Ex. 298 at 006976).

5. <u>Claimants' Arguments as to Notice and Opportunity to Cure</u>

Claimants argue that notice under the contract required a ten day cure period. Forbes argues that the notice provisions are not the exclusive means for terminating for material breach under New York law and that cure would be futile because of a pattern of Claimants concealing breaches or making empty promises to take steps to assure editorial independence.

The arbitrator finds that any requirement of a cure period was more than satisfied by the standstill that was entered into between the parties after the March 4 notice. This period eventually extended over six months and did not involve any withdrawal of the original termination notice. There was ample time for Claimants to seek to agree to an independent editorial board or take other concrete steps acceptable to Forbes to resolve the claims of breach in this period, as indeed they promised they would do (*e.g.,* Forbes Ex. 214). That Forbes did not send further formal, for-the-record notices of the further instances of violations during the standstill period when no corrective action was taken is irrelevant as no such

requirement existed.  The contention that a new ten day cure period was required despite the failure to cure the breach in all the time that elapsed between the March and the September borders on the frivolous.  Moreover, Claimants have made no contention that they have discussed with Forbes or made any efforts at a cure since September either before or after they commenced this proceeding or after receiving Forbes' original answer and counterclaims extensively amplifying the claims of breach.

6.     Effect of the Breaches

The nature of these breaches is such that they would tend to have a profoundly negative effect on the Forbes trademarks, brand, and reputation both within the Ukraine and worldwide, and in both the journalistic and advertising communities and beyond.  The testimony of Mr. Federle and Mr. Satter were convincing that indeed these breaches had had, and were continuing to have, just such a profoundly negative effect.  As Mr. Federle testified, the repercussions involve not only damage Forbes' reputation for journalistic integrity and quality but extend to Forbes' commercial interests both within the Ukraine and in other countries, including its effect on conferences and other activities and ventures as well as Forbes' relations with its thirty six other international publishing licensees.  This testimony thoroughly dispelled Claimants' suggestions at various times in these proceedings that the terminations were pretextual or in bad faith.

Forbes did not pursue monetary relief at the hearing, which would undoubtedly have been difficult to calculate.  But it has amply demonstrated that permanent injunctive relief is necessary to assure that termination of the right to use the Forbes trademarks and name will be effective and that its reputation, goodwill and the value of its intellectual property will be protected.  The arbitrator notes that such injunctive relief is specifically provided for in ¶27 of the original agreement.

7.     **The Force Majeure and Impossibility Claims Based on the Executive Order**

The arbitrator denied broad injunctive relief on the basis of Executive Order 13660 on a preliminary basis in two previous orders of January 27, 2016 and February 5, 2016 pending fuller development at the hearing and the possibility of further guidance.  These were rulings on motions for extraordinary preliminary relief based on the showings made by counsel at the time and not final decisions based on a fully developed record.

Before the merits hearing I had not seen the actual submissions for "guidance" submitted on behalf of Forbes by Mr. Newcomb, who appeared as an expert for Forbes.  At the hearing, in response to an objection by Claimants' counsel, I ruled that I would accept Mr. Newcomb's testimony as an expert with respect to matters in his report but not with respect to his interaction with the government on Forbes' behalf as to which he would be considered a fact witness.

I had not at that time thoroughly reviewed those extensive submissions which were to some extent advocacy documents.  See, *e.g.,* Forbes Ex. 455 (seeking assistance "which would help bring about a favorable order in the Forbes/UMH arbitration" at page 3); Forbes Ex. 457 at Page 9 (seeking relief "in Forbes' interest" and even asking OFAC to mandate reversal of a neutral's prior order).  As was noted by Forbes itself at the hearing (tr. 543-44), the documents elicited by their submissions did not even directly answer the question of how exactly the Order would apply to a fully-paid license to a non-US trademark.

There is nothing improper about such advocacy on Forbes' behalf.  But the representations that Mr. Newcomb's testimony would be helpful because "we went out and hired the best [and indeed Mr. Newcomb's credentials are impeccable], and we asked the questions of him that you asked of us" (tr. of February 3 motion hearing at 8) and "I believe that he has asked them [the State and Treasury Departments] to provide guidance, and I think that is consistent with your order" (*id* at 88) do not in fact accurately state the full extent of his activities or mission as a Forbes advocate seeking to secure not just guidance, but specific results, for Forbes.

I therefore continue to reject Mr. Newcomb's role as expert except to the extent of the conclusion in his report, prior to his approaches to the Treasury and State Departments for "guidance," that an entity in Forbes' position would have reasonable ground to believe it might need to take action to terminate the license to protect itself.  That proposition I accept.  I otherwise reject Mr. Newcomb as an expert and accept his testimony as a fact witness only to the extent that it bears on the background of the guidance and licenses received by Forbes.

Nevertheless, despite the somewhat tortured rationale of the Executive Order as applied to a fully-paid license and a proceeding such as this, I am forced to conclude that the breadth of the Order, the breadth of the statutory authority under which it was promulgated, and OFAC's apparent interpretation of it in Forbes Exhibits 453 and 454 all dictate the conclusion that the regulation does apply to the Agreement and trademark license.  Performance by any U.S. person of any

material obligations under the Agreement would be suspended and impossible of performance unless and until either a) Mr. Kurchenko were no longer to be designated as an SDN or b) a license to allow continued performance were to be obtained.

There is no dispute that Forbes is a United States person under the Executive Order, and Claimants have not disputed or presented evidence to refute the conclusion that Claimants are covered persons by virtue of Mr. Kurchenko's ownership interest.  Even apart from treatment of prepaid royalties which Forbes may now be unable to access, material obligations of Forbes, which as a United States person it is now precluded from performing, include the obligation to continue licensing the trademark and use of the Forbes name, to police the use and exercise quality control over the trademarks in the Ukraine for the benefit of Forbes as well as its licensee (even though Claimants may disagree with some of these measures within the Ukraine), and to continue to provide website connections and content.  The inability of Forbes to fulfill these obligations in turn makes it impossible for Claimants to continue offering authorized versions of the Ukrainian Forbes under the terms of the Agreement.  The force majeure provision in the parties' Agreement (Forbes Ex. 298, Part Two, ¶34) on which Forbes relies allows termination by either party for an inability to perform by either party for ninety days, as was the case when Forbes sent its termination notice in November (Forbes Ex. 442).  The arbitrator must therefore conclude that Forbes has effectively terminated the Agreement under ¶34 on grounds of force majeure and impossibility of performance as well as for the reasons of material breach stated earlier in this opinion.

## Cost shifting, Sanctions and Fairness

The parties have raised various points about positions taken by their respective adversary or adversaries and their effect on the cost and ability to prepare for the hearing.  Claimants sought yet another adjournment at the start of the hearing to seek to reengage one of its three previous counsels, contending that counsel as a U.S. person formerly believed to be barred from participating under the Executive Order could now participate under the temporary license obtained by Forbes.  Former counsel, however, had indicated other reasons for withdrawal not dissimilar to those discussed in my January 27, 2016 order with respect to scheduling. These reasons stem from the failure of Claimants to have participated actively or to have provided information or complied with prehearing orders and agreements.  Therefore, essentially for the reasons stated in my prior order, I denied this request at the hearing.

Delay, whether sought to be used as a deliberate tactic as Forbes suggests or to cure Claimants' own earlier inattention, clearly favors Claimants and disadvantages Forbes unfairly. Claimants have had more than an adequate opportunity to prepare their case during the year and a half since they filed it; their Ukrainian counsel clearly well understood their case and did a thoroughly adequate job of presenting it; and all the material points in their pleadings and prior submissions were explored at the hearing through their own witnesses and latitude afforded counsel on cross-examination.

On the other side, Forbes has contended vigorously that Claimants' delay and failure to produce information has prejudiced it and increased its costs. It has sought, as noted, an allocation of costs and an award of attorneys' fees as well as contending that adverse interests be drawn in its favor.

There is merit in these contentions but at the end of the day I adopt only some of the relief requested. I have not needed to rely on adverse inferences to decide any issues in this case. The parties' arbitration provision provides that costs will be shared unless I exercise my discretion to act otherwise, and I exercise that discretion to the extent of shifting some of the fees and expenses of this proceeding to Claimants as set forth in paragraph 5 of the award because of the additional motion practice, inconvenience and delay their actions caused. Forbes, however, was clearly not prevented from putting on a very extensive case and ultimately my rulings with respect to scheduling prevented it from suffering any extensive delay. Claimants' two most recent counsel made sincere efforts to participate fully, effectively and respectfully at the hearings.[2] Therefore, I do not find that further sanctions are warranted.

## AWARD

Accordingly, I AWARD as follows:

1. The first and third claims asserted in Claimants' Second Amended Statement of Claim and Claimants' request for declaratory and injunction relief are dismissed with prejudice;

---

[2] It should also be noted in the weighing of the relative equities that under my ruling Claimants have forfeited substantial prepaid royalties as well as their license rights.

2.  The second claim asserted in Claimants' Second Amended Statement of Claim and request for damages is dismissed with prejudice;

3.  On requests (a) through (c) in Forbes' Amended Answering Statement and Counterclaims the Forbes Foreign Language License Agreement is hereby declared terminated pursuant to ¶¶25, 26 and ¶34 of Part Two of the Agreement and unenforceable by virtue of force majeure and impossibility of performance.

    Claimants and all persons which they control, with which they are affiliated, which act in concert with any of them or which have notice of this Award, are permanently enjoined from directly or indirectly: using the Forbes trademark, logos or name, or Forbes content; publishing a magazine, website or other publication or a service, whether in print or electronic form, or engaging in any other activities using any such trademark, name, logo or content;  otherwise representing themselves or their activities as associated or affiliated with Forbes; or engaging in any other conduct or taking any other action under the guise of authorization under the Agreement or from Forbes except for action required by any of them to be taken under Part Two, Section 25 or Part Two, Section 26 of the Agreement to the extent any such action may be taken consistent with Executive Order 13660.  For the avoidance of doubt, the actions enjoined by this award include any action that would violate the injunction set forth in my order of February 5, 2016 which is hereby made permanent.

4.  Requests for further relief in the form of damages, costs and attorneys' fees or other relief in requests (c), (d) and (e) of Forbes' Second Amended Answering Statement and Counterclaim are denied except as stated in paragraph 5.

5.  The administrative fees and expenses of the International Centre for Dispute Resolution (ICDR) totaling US$18,800.00 shall be borne entirely by Claimants.  The compensation and expenses of the arbitrator, totaling US$82,880.00 shall be borne in the proportion of two thirds by Claimants, or US$55,253.33, and one third by Respondent, or US$27,626.67. Therefore, Claimants shall reimburse Respondent the sum of US$48,613.33 representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Respondent.

6. This Final Award is in full settlement of all claims, counterclaims and requests for relief submitted to this Arbitration.

I hereby certify that, for purposes of Article I of the New York Convention of 1958, this Award is deemed to have been made at the place of arbitration in New York, New York.

Dated: *April 20, 2016*

James B. Kobak, Jr.
Arbitrator

13

State of STATE   *New York*  )

County of COUNTY *New York* )   )   SS:

I, James B. Kobak, Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

_*April 20, 2016*_
Date

_*James B. Kobak, Jr.*_
James B. Kobak, Jr.

State of STATE   *ny*   )

County of COUNTY *ny* )   )   SS:

On this *20th* day of *April*, 20*16*, before me personally came and appeared James B. Kobak, Jr. to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_*Kathleen Augello*_
Notary Public

**KATHLEEN AUGELLO**
**Notary Public, State of New York**
**No. 01AU5055477**
**Qualified in Richmond County**
**Certificate Filed in New York County**
**Commission Expires February 12, 20__**

EXHIBIT A

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

<u>International Arbitration Tribunal</u>

UNITED MEDIA HOLDINGS, N.V. and
TRILADO ENTERPRISES, INC.,

                        Claimants,

        -against-

FORBES MEDIA LLC,

                        Respondent.

Case No. 01-14 0001-4742

## ORDER WITH RESPECT TO FORBES MEDIA LLC'S REQUEST FOR <u>EMERGENCY INTERIM MEASURES</u>

    1.  On August 10, 2015 Respondent and Counter Claimant Forbes Media LLC ("Forbes") filed a "Request for Emergency Measures" seeking (i) to enjoin Claimants United Media Holdings, NV and Trilado Enterprises Inc. ("Claimants") from in substance i) utilizing the Forbes trademark and news, editorial and pictorial content by publishing a Forbes magazine in the Ukraine or using a website with the name "Forbes" and (ii) otherwise enjoining the parties from performing any aspect of their existing licensing agreements which would involve the provision of "goods, funds or services" from Forbes to Claimants or vice versa.  The precipitating cause of this request for extraordinary interim relief was the U.S. government's placing (as of July 31, 2015) of a principal of Claimants with an allegedly controlling interest in the Claimants on the list of "specially designated nationals" ("SDNs") or blocked persons under Executive Order 13660.  Under the Executive Order U.S. entities such as Forbes are forbidden (absent a license) to engage in defined conduct with an SDN or entities which an SDN controls.  The Executive Order was promulgated pursuant to the Emergency Economics Powers Act (*50 U.S.C. §17012*).

    2.  Following receipt of Forbes' request, the arbitrator convened an emergency telephonic conference that same afternoon at which counsel for the parties were heard and the date of August 14 at 4:00 o'clock p.m. was set for submission of Claimants' papers in response.  Following receipt of these papers, the arbitrator scheduled a telephonic hearing on the merits on an expedited basis for the afternoon of Sunday, August 16.

    3.  Based on review of the parties' submissions and the arguments of counsel at the August 16 hearing, the arbitrator denies the request for emergency relief based on the record and submissions to date, without prejudice to further requests for interim relief should circumstances change or the Executive Order be amended or its scope clarified by OFAC guidance or directions.

    4.  Forbes has not on the basis of the submissions to date shown a likelihood of success on the merits of its core contention that continuation of the license will have to involve conduct

that it is prohibited from performing by the Executive Order or that the contract is void. It has also not shown that it will necessarily be irreparably harmed from mere continuation of the status quo pending final hearing. In addition, the potential harm to Forbes does not outweigh the potential harm to Claimants from a change in the status quo which would require them to cease offering Forbes content and access to a Forbes website in the Ukraine.

5. Assuming that the Executive Order applies to Claimants, a point that is not contested for purposes of this motion, the two applicable sections of the Executive Order are Section 1(a) and 4(a) and (b). Section 1(a) refers to "property and interests in property" of SDNs in the United States or that come within the possession of U.S. persons such as Forbes. The property interest here, however, is the Ukrainian trademark already owned by Forbes. It is true that Claimants have a further "interest in property" by virtue of the license and contract with Forbes. Forbes argues that performance by Claimants under the contract and license insures to Forbes' benefit and thus gives Forbes in effect a further property interest in Claimants' interest in property such that virtually any activities with respect to the licensed trademark would be prohibited as dealing in property of an SDN in the possession of a U.S. person. In the arbitrator's view Forbes does not hold or deal in "property or interests in property" separate from the interest Forbes already holds in its own trademark.

6. Paragraphs 4(a) and (b) of the Executive Order prohibit the contribution or receipt, respectively, of "funds, goods or services" from or to an entity controlled by an SDN. At this point, no "funds" are due from Claimants to Forbes since all basic royalties are prepaid, and no funds are likely to be received by Forbes from Claimants in the foreseeable future. (In what appears to be the unlikely event that additional royalties above the minimum guaranteed royalties were to be earned, they are neither so likely nor so imminent as to justify any need for immediate relief at this time.) Forbes' contention that it apparently takes into income a pro rata portion of the prepaid royalties every year for accounting and tax purposes and its concession that Claimants could recover these "unearned royalties" in the event of a material breach does not persuade the arbitrator that this treatment should be regarded as the "receipt of any contribution or provision of funds" from Claimants under the Executive Order.

7. The provision of "goods or services" which Forbes contends are illegal and should be preliminarily enjoined are the provision of content and maintenance of a website address. Claimants, however, argue that the authorizing statute contains (in 50 U.S.C. §1762 (b)) a limitation on the President's authority to block importation or exportation of "informational materials" including specifically "publications" and "news wire feeds."

Forbes argued at the hearing that this exception does not apply, relying on the case of *United States v. Amirnazmi*, 645 F. 3d 564 (3d Cir. 2011) and limitations in the regulations of "informational materials" to materials in finished form. The arbitrator believes that the news feed, magazine and content provided by Forbes, as Claimants proposes to use them, are all pre-existing (or, in the word's of the *Amirnazmi* court "in-being"), and non-customized "informational material" which is clearly distinguishable from the software embodying technology to be adapted by both parties for particular technological purposes at issue in *Amirnazmi*. (Although not directly applicable, the use here seems more comparable to that which OFAC declared likely to be exempted in the response to question four in an interpretation

of April 2, 2004 involving importation and editing of magazine content under other sanctions regimes.)

8.  Much of Forbes' request centers on the website services it agrees to provide to Claimants.  These services, while relatively modest and involving de minimis cash outlays, may nevertheless be covered by the terms of the Order.  They may not themselves fall within the "information materials" exception, at least as it may be interpreted by OFAC, and there is apparently no *de minimis* exception in the Executive Order.  These services appear to involve (a) appointment of an agent, (b) modest annual payments to third parties that will next be due next February (when the merits hearing is scheduled) and (c) possible modest payments for services that may occasionally arise.  Maintenance of these limited services appears to be easily performable on an interim basis by Claimants at their own cost with the simple consent of Forbes and Claimants agreed at the hearing that they could and would do so; that consent, involving Forbes' own property, would not appear to involve dealing in or obtaining any interest in property of an SDN or an exchange of "funds, goods or services" between the parties.  It appears to the arbitrator to be an appropriate step both to preserve the status quo and avoid any violation of the Executive Order.  To the extent that Forbes does not consent, Claimants are now providing their own URL with a "Forbes" name.  This may breach the wording of the contract but is a step required to preserve the status quo in light of an obligation which Forbes is unable to perform.  The arbitrator does not regard this conduct as meriting extraordinary injunctive relief prior to the merits hearing based on the material before him and the totality of the circumstances.

9.  The arbitrator also does not find that a showing of likelihood of success has been made on the contention that the contract is void and unenforceable as "malum in se".  As already noted, the provisions of the Order do not appear to apply to most aspects of the contract, which contains a severability clause.  Moreover, as Forbes itself points out, the contract was valid when entered, even assuming the Executive Order could be deemed to apply to some aspects of the contractual relationship, such as the website services. The Order itself provides that "orders, directives or licenses that may be issued pursuant to this order" may grant exceptions.  It also appears that any prohibitions in the Order would cease to apply should the SDN cease to maintain a controlling interest in the Claimants.

10.  The arbitrator does not find that Forbes, on the basis of the submissions to date, has made a compelling showing on immediate and irreparable inquiry.  There is no showing of likelihood of imminent enforcement or threats of enforcement for any potential violation of the Executive Order, should one be deemed to have occurred, nor has there been any showing of an OFAC interpretation or denial of a request for a license that makes it likely Forbes faces any immediate jeopardy.  It also does not appear that Forbes faces any immediate threat to its trademark interests from the Executive Order beyond its previous allegations about its association of its name and trademark with the SDN and the SDN's possible interference with editorial control.  Without diminishing their seriousness, these allegations are the subject of the scheduled merits hearing in February; the Executive Order does not appear to have changed these conditions so substantially as to require a change in the status quo pending the hearing.

11.  Furthermore, altering the status quo as Forbes advocates would likely have, as Claimants contend, an immediate damaging effect on Claimants' ability to continue in business.  While this showing of irreparable harm is also somewhat general, it is enough to lead the

arbitrator to conclude that there are equities on both sides and no clear balance of hardships in Forbes' favor.

    12.  This interim order is without prejudice to renewal of an application for interim relief in light of changed circumstances, including without limitation a threat of enforcement or further guidance concerning the Executive Order.  This Order responds to a request for preliminary relief on limited facts and a limited record.  Nothing in this Order should be interpreted as a lack of concern for the importance of the Executive Order or the SDN's listing under it, the importance of full compliance with the terms of that Order, or a determination on the merits of any issues raised by the parties.

    13.  Both Forbes and Claimants have requested permission to amend their pleadings in light of the developments concerning the Executive Order and actions by the parties in response to them.  These requests are granted.  The parties are directed to seek to agree and report to the arbitrator by August 24 on a schedule for any such amendments.

August 19, 2015

James B. Kobak, Jr.
Arbitrator

-4-

# EXHIBIT B

AMERICAN ARBITRATION ASSOCIATION

UNITED MEDIA HOLDINGS, N.V. and
TRILADO ENTERPRISE INC.,

                **Claimants,**            Case No. 01-14-0001-4742

      -against-

FORBES MEDIA LLC

            **Respondent.**

Order

This proceeding has been pending since Claimant filed its demand for arbitration in September, 2014.  The underlying question of whether the licensing agreement should continue has been undecided for almost two years.  A hearing has been scheduled after many discussions with and among the parties for February 1 through 3 and possibly 4, 2016 since last July and a discovery schedule and schedules for submitting briefs, witness lists and exhibit lists set accordingly.  A motion by Claimant to postpone the hearing date was filed in November and denied for lack of showing of good cause, though some adjustments in the pre-hearing schedules to accommodate Claimant were made.

On January 19, 2016, two weeks before the start of the long-scheduled hearings, Claimant's former counsel served notice that it was withdrawing as counsel.  No reason for withdrawal was stated.  Respondent and Counter-Claimant Forbes Media LLC ("Forbes") responded almost immediately by letter that it objected to any withdrawal that would postpone the hearing dates.  The letter and subsequent correspondence and submissions asserted that Claimant had failed to comply with the scheduled discovery and other aspects of the pre-hearing schedule while Forbes had substantially complied.  Forbes indicated in this subsequent correspondence that it and witnesses had incurred expense and inconvenience in preparing for the hearing, including arrangements not only with court reporters and translators but for witnesses to travel from abroad.  Forbes also argued in further correspondence and a subsequent motion that it faced prejudice from a decision in the Ukraine which it asserts is prohibited by the arbitration clause in the parties' contract and inconsistent with a prior ruling of the arbitrator.  Forbes further contended that a need for imminent resolution existed because of the possibility that the continued existence of the license agreement and other elements of the parties' contractual relationship might violate an OFAC order applicable to one of the Claimant's principals, an issue on which the arbitrator had earlier denied preliminary injunctive relief pending decision on the merits at the hearing.

Thereafter, on January 22 Forbes filed its pre-hearing memorandum of law and supporting papers, which included a motion for emergency measures, and filed its witness list and exhibit list.  Forbes had previously filed expert reports on January 8, in accordance with the

agreed schedule, noting at that time that Respondents had not completed document discovery, had not made any witnesses available for deposition and had not submitted expert reports.

On January 23 a representative of Claimant indicated by email that Claimant was attempting to secure new counsel and had contacted Matthew Draper of Draper and Draper LLC for that purpose; the email also requested that if new counsel were retained, the hearings would need to be rescheduled.  Shortly thereafter Mr. Draper emailed that he was discussing representation with Claimant and that any new counsel would require a "short delay" of the hearing dates to get up to speed.  Counsel for Forbes vigorously opposed any request for adjournment. The arbitrator scheduled a conference call to discuss the request for adjournment and related issues as soon as he was informed that Mr. Draper would be representing Claimant, at least for purposes related to scheduling.

At the conference there was no dispute that Claimant had failed to comply with its discovery obligations.  The reasons for this were attributed to disagreements between Claimant and former counsel about payment of fees leading to a slow down or discontinuance of work, disagreements about various tactical matters and possible failures in communication between counsel and client about the importance of discovery obligations and hearing schedules. Assuming that no deliberate tactic of delay by Claimant is involved (as Forbes suggests may be the case), none of these reasons – whether primarily attributable to former counsel, the client, or a combination of both – would justify an adjournment had former counsel continued in the case and not been allowed to withdraw.  Only in deference to new counsel does it seem at all appropriate to consider the requested "short delay."

During the conference, Mr. Draper suggested approximately five months, but that far exceeds the arbitrator's definition of "short" and could confer a potentially unwarranted, even if unintentional, tactical advantage on Claimant.  As expressed during the conference, the arbitrator believes that, while new counsel will undoubtedly have to work diligently, an adjournment of most of the hearing for slightly more than one month will allow sufficient time for preparation while avoiding unnecessary prejudice to Forbes, further inconvenience to third parties, and further delay in resolving pending sanctions and other issues and the status of the license agreement. Because of the circumstances of one witness who may otherwise be unavailable, the hearing will commence on February 3 at 9:00 A.M. for the purpose of hearing the testimony of that witness.  The hearings will then be adjourned until Thursday, March 3 and will continue to March 4 and, if necessary, Saturday, March 5.

As indicated at the conference, at the conclusion of the testimony on February 3, the arbitrator will hear Forbes' Motion for Emergency Measures, with respect to which the parties may make such further written submissions prior to February 3 as they deem necessary.

3

In the event that Claimant or Mr. Draper informs Forbes and the arbitrator that Claimant will not be represented by new counsel, the hearings will proceed as originally scheduled, commencing on February 1.

January 27, 2016

James B. Kobak, Jr.
Arbitrator

67988019_1

EXHIBIT C

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal

**In the Matter of Arbitration between:**

Case Number 01-14-0001-4742

      United Media Holdings, N.V.; and
      TriLado Enterprise, Inc.,

                        *Claimants,*

   v.

    Forbes Media LLC,

                     *Respondent.*

## OPINION ON REQUEST FOR EMERGENCY MEASURES
## AND
## AWARD OF INTERIM INJUNCTIVE RELIEF

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration provision in the Forbes Foreign Language License Agreement entered into by the above-named parties on October 21, 2009, as amended on June 8, 2012, October 12, 2012, June 17, 2013, and October 30, 2013 (the "Agreement"),[1] and having been duly sworn, and having read the allegations, claims and written submissions of the Parties, and having heard substantial argument from counsel for the Parties, do hereby rule and AWARD, as follows:

1. Forbes Media LLC ("Forbes") has requested emergency injunctive relief pending final hearing on the merits of this proceeding which was commenced by Claimants in 2014.  This is a renewal of an earlier request by Forbes for emergency relief which the arbitrator denied based on the record at the time and the then scheduled discovery and hearing dates.  The arbitrator specifically ruled that his denial based on the record at that time was without prejudice to reconsideration.  Forbes presents additional information and argument, including an expert report opining that continuation of the license agreement may be illegal and its enforcement could be prohibited for U.S. persons under Executive Order 13660 issued by the President of the United States.

2. Forbes also makes a new and further request for interim injunctive relief based on the institution of proceedings by Claimant's sublicensee (an entity controlled by

---

[1] The Tribunal has authority to make this Award pursuant to Rule 37(b) of the American Arbitration Association Commercial Rules and Part II, Section 32(c) of the Agreement.

Claimants) in, and the resulting decision and findings or assumptions of, the Sadhirsky District Court of the City of Chernitsi (the "Ukranian Court"), in Case No. 726/2309/15-ts apparently dated December 28, 2015 (the "Ukranian Decision"). Forbes' application has been precipitated in large part by the fact that the long-scheduled hearing on the merits of this matter was originally to have been concluded by now but was postponed at Claimants' request until March 3 as set forth in my Order of January 27, 2016. Claimants were unprepared to go forward as originally scheduled because of the resignation of their former counsel shortly before the hearing and Claimants' failures to participate fully in discovery and submit expert reports and other papers in the arbitration proceeding which it initiated. Had the hearings proceeded as scheduled, a final award either granting or denying some or all of the interim requested by Forbes would have already been or shortly would be entered.

3.  The Ukranian decision ordered that the domain name and URL: www.forbes.ua be registered in the name of the Claimants' sub-licensee. This ruling was, in the words of the Ukranian Court, (according to the penultimate paragraph preceding the heading "RESOLVED ON THE FOLLOWING" in an English translation) "based on the validity of the Agreement, since its effective term expires on 13.30.2018, and at the time of its review by the Court was such as remains in effect ...." and the assumption stated a few paragraphs earlier in the decision that the plaintiff, Claimants' sublicensee, "had all legal grounds" under agreements "in effect until..... 12.30.2018". These assumptions presuppose the continued validity of the Agreement between Forbes and claimants now and through December, 2018, but that is an unsettled and disputed issue being determined in this proceeding.

4.  Since the Ukranian Court proceeding was instituted by a sub-licensee, and not Claimants themselves in their own name, and since Forbes was not joined as a party, the Ukranian Court was apparently unaware of this arbitration and the underlying dispute about the continued validity and enforceability of the Agreement, including the facts that Forbes attempted to terminate it for cause and the possibility that its continuation is blocked by Executive Order 13660 as a prohibited transaction between a U.S. person and an entity owned by a specifically designated national. The Ukranian Court was apparently also unaware of the arbitration provision and claimants' prior request to the arbitrator to obtain access to the domain name and URL as discussed in paragraph 5, below.

    While the full hearing has not been held and the arbitrator will not prejudge the ultimate result, Forbes has made a substantial prima facie case both for termination for cause and as a result of Executive Order 13660, and the license could be found at the hearing in a matter of a few weeks to have been terminated or no longer capable of operation -- long before December, 2018.

5.  The Claimants have not disputed that the relief requested and obtained from the Ukranian Court related directly to a dispute relating to the Agreement. Part II,

Section 32(b) of the Agreement provides that neither party "shall institute a proceeding in any court or administrative agency to resolve a Dispute relating to the Agreement, except for a court proceeding to compel arbitration or otherwise enforce this Agreement to arbitrate or any arbitration award rendered hereunder." A prior request to obtain essentially the same result as that sought and granted indirectly in the Ukranian Court was already made and rejected in this proceeding pending the outcome of the full hearing on the merits. Claimants do not dispute that institution of the Ukranian Court proceeding clearly violates the arbitration provision.

6. Based on the clear and undisputed arbitration provision quoted above, and apart from other arguments forcefully argued by Forbes (which the arbitrator will continue to consider pending further developments), a clear showing of substantial likelihood of success has been made on the merits of the claim that Claimants have violated the arbitration provision and should be enjoined from taking any steps to enforce the Ukranian decision or otherwise obtain control of the website domain name and URL: www.forbes.ua unless such relief is ordered in this proceeding.

7. A more than sufficient showing of irreparable harm has also been made by Forbes. Absent immediate injunctive relief, actions may be taken through the Ukranian courts or pursuant to the Ukranian Court decree that could prejudice Forbes' right to effective final relief should it prevail in this proceeding. Such actions may also irreparably injure its trademark rights and reputation.

8. Not only does Forbes demonstrate several aspects of potential reputational harm, but also it argues with expert support that any such actions would increase the risk to it of possible violation of Executive Order 13660.

9. The balance of the equities also weighs heavily in favor of Forbes with respect to enjoining further violations of the arbitration provision and preserving the exclusive choice of forum to which Claimants agreed in the very Agreement under which any rights to the website are premised. Against the factors set forth above in paragraphs 7 and 8, any harm to Claimants from maintaining the status quo for a few additional weeks pending the hearing which they themselves requested be adjourned appears temporary and unsubstantial. Public policies in enforcing arbitration clauses and maintaining the integrity of proceedings, as well as the policies of the United States embodied in Executive Order 13660, also weigh in favor of relief as part of the balancing of equities and harms.

10. Forbes seeks broader injunctive relief that would prohibit Claimants from making any use of the Forbes mark and names pending the hearing on the merits. As indicated, Forbes has made at least a *prima facie* showing of likelihood of success on several of its arguments and of some degree of irreparable harm, including from the potential violations of Executive Order 13660. The arbitrator is not convinced at this time that the extraordinary relief of an interim injunction ranting

4

such extensive relief is warranted for the short period of time before the hearing but will hold the request for such further relief in abeyance pending the merits hearing and further developments.

AWARD

Accordingly, it is hereby ORDERED as follows:

Until further order of the tribunal, Claimant and all parties which they control, with which they are affiliated, which act in concert with either of them, or which have notice of this order are hereby ordered to take no action, directly or indirectly, to enforce or give effect to the Ukranian Decision in a manner which would transfer to Claimants or their delegates, agents, licensees or sub-licensees, directly or indirectly, rights to access or operate the domain name and URL: www.forbes.ua or take other actions that would achieve the same result.

- I hereby reserved jurisdiction for all other issue submitted in this matter. The matter shall now proceed as detailed in the procedural order dated January 27, 2016.

I hereby certify that, for the purposes of Article 1 of the New York Convention, this Opinion on Request for Emergency Measures and Award of Interim Injunctive Relief is deemed to have been made at the place of arbitration, in New York, New York, USA.

Dated:  February  5 , 2016

James B. Kobak, Jr.
Arbitrator

I, James B. Kobak, Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Opinion on Request for Emergency Measures and Award of Interim Injunctive Relief
.

_February 5, 2016_
Date

_James B. Kobak, Jr._
James B. Kobak, Jr.

State of  Ny  )
          ) SS:
County of  Ny  )

KATHLEEN AUGELLO
Notary Public, State of New York
No. 01AU5055477
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires February 12, 20__

On this 5th day of February, 2016 before me personally came and appeared James B. Kobak, Jr., to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_Kathleen Augello_
Notary Public